UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AARON JUSTIN HARLOW,<br><br>Plaintiff,<br><br>v.<br><br>DANI HAMLYN, et al.,<br><br>Defendants. | CAUSE NO. 3:24-CV-956-HAB-SLC |

OPINION AND ORDER

Aaron Justin Harlow, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Harlow is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

BACKGROUND

Harlow's handwriting is quite difficult to decipher in places, but the court has endeavored to discern the relevant facts from his pleading. He is currently an inmate at

Miami Correctional Facility ("MCF") who has a long-time opioid addiction. He was transferred there in April 2024 from another facility, and at that time was participating in the "MAT" program, which from his description appears to be a special program within the Indiana Department of Correction ("IDOC") for inmates with serious drug addictions. It can be discerned that he signed a "contract" agreeing to certain conditions in exchange for the benefits the MAT program provides, which includes medication to address opioid addiction.

He claims he was receiving suboxone when he arrived at MCF, and he continued to receive it for about two months. In June 2024, it was determined by his primary care physician in the MAT program, Dani Hamlyn, that he should be weaned off the medication. It appears he was accused of diverting the medication to other inmates, although he claims he engaged in no wrongdoing. On the date his medication was discontinued, he got into a verbal dispute with Dr. Hamlyn. She allegedly became angry and told him to leave the medical unit. He claims the process of weaning him off suboxone was done too abruptly, and that as a result he suffered severe withdrawal symptoms for a period of months including vomiting, weight loss, difficulty sleeping, anxiety, and other issues. He further claims that she also discontinued medication he was taking for unrelated problems, such as high blood pressure, for no apparent reason. He filed numerous requests and grievances asking to be put back on suboxone, but was allegedly ignored.

In September 2024, he was transferred to another area of the prison, where he was seen by a different medical provider. By that point he claims to have lost 57

pounds. It can be discerned that he began to receive care at that point and was provided a high-protein diet, medication, and mental health treatment. As of the filing of the complaint in November 2024 he had regained approximately 30 pounds. Based on these events, he sues multiple prison employees, both named and unnamed, seeking money damages and injunctive relief.

## ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer

3

to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Giving Harlow the inferences to which he is entitled at this stage, he has alleged a serious medical need. On the second prong, he claims that Dr. Hamlyn abruptly discontinued his drug addiction medication, causing him to suffer serious withdrawal symptoms over a period of months. He further claims she discontinued the medication he was taking for other problems, including high blood pressure, for no apparent reason. He will be permitted to proceed on an Eighth Amendment claim against this defendant.[1]

He also sues "R.N. Chad,"[2] who at some point told him he would be continuing to receive suboxone, even though he did not receive it. He believes this was "misleading" and improper. There is insufficient factual content from which the court can plausibly infer that R.N. Chad had the authority to prescribe medication or to

---

[1] To the extent he is attempting to enforce his rights under the MAT program, he cannot do so under 42 U.S.C. § 1983. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). The court understands him to be claiming more broadly that he was denied minimally adequate medical care in violation of the Eighth Amendment.

[2] At one point in his factual narrative he refers to this individual as "Dr. Chad," but in the section where he lists the defendants he makes clear this defendant is a Registered Nurse. (ECF 1 at 1.) The court notes that he also refers to Dr. Hamlyn once as an "R.N.," but his complaint makes clear that she was the individual prescribing his medications. At this stage, the court affords him all favorable inferences and presumes she is a medical doctor or a nurse practitioner who can prescribe medication.

4

override Dr. Hamlyn's treatment decisions. *See Reck v. Wexford Health Sources*, Inc., 27 F.4th 473, 485 (7th Cir. 2022) ("As a general matter, a nurse can, and indeed must, defer to a treating physician's instructions."). R.N. Chad may have been mistaken, or even negligent, in telling Harlow that he was going to receive suboxone, but this does not give rise to an Eighth Amendment claim. *Hildreth*, 960 F.3d at 425.

Likewise, he sues "Nurse Lisa," who was passing out medications on the day his suboxone was discontinued. He complained to her when she told him that was his last dose, at which point Nurse Lisa went to speak with Dr. Hamlyn. She returned and told him, "sorry," that Dr. Hamlyn had confirmed the medication was discontinued and told him to put in a health care request if he had concerns. Like R.N. Chad, there is no indication Nurse Lisa had the ability to prescribe medication or to override Dr. Hamlyn's treatment decisions. He has not plausibly alleged an Eighth Amendment violation by this defendant.

He also sues the unnamed "Health Care Administrator" at the prison, claiming she did not properly respond to his written requests for care after he was discontinued from suboxone. It can be discerned that this individual told him she was having difficulty reading his handwriting and to resubmit his request explaining more clearly what he needed.[3] It is also clear that some of his requests for care were forwarded to the

---

[3] He submits a number of grievances and health care requests as exhibits to his complaint, and they are in fact quite difficult to decipher. (ECF 1-1 at 1-52.) Additionally, in some of his written correspondence he presented the issue as an alleged violation of the Americans with Disabilities Act. (*See* ECF 1-1 at 5-7, 28.) It is not evident that the Health Care Administrator would have received these documents or that they would have put her on notice he was in need of medical care for a serious medical issue. The court notes that he disavows any intention of asserting an ADA claim in this lawsuit. (*See* ECF 1 at 14.)

MAT committee, which included Dr. Hamlyn. (ECF 1-1 at 12, 35.) Based on the Health Care Administrator's limited involvement, the court cannot plausibly infer that she committed an Eighth Amendment violation.

Similarly, he sues Amber Smith, whom he describes as a mental health provider within the MAT program. He wrote to her to complain about what happened, and she too responded that she was having difficulty understanding what he was requesting. In response to one of his requests, she stated that if he was asking to be put back on suboxone, he would need to make this request to medical staff. (ECF 1-1 at 23.) It is unclear what additional involvement, if any, she had in these events. There is insufficient factual content to infer that this individual had the ability to override Dr. Hamlyn's treatment decisions or that she exhibited deliberate indifference to a serious medical need.

He also sues "Ms. Hensley," whom he believes is a member of the MAT program committee, as well as "any unknown MAT Provider not known at this time." Ms. Hensley allegedly told him that he had been rude to Dr. Hamlyn and that he should apologize. There is no indication from his complaint that this individual had the ability to override Dr. Hamlyn's treatment decisions, or that she otherwise exhibited deliberate indifference to his serious medical needs. He does not explain the basis of his claim against "unknown MAT provider[s]," and these individuals cannot be held liable simply because they were part of the MAT program. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). He will not be permitted to proceed against these individuals.

He also sues J. Rodgers, whom he identifies as a "PsyD HSPP." (ECF 1 at 2.) He does not provide factual narrative related to this defendant and instead points the court to "Exhibit L" to the complaint. (*Id.* at 15.) This is not the proper way to plead a claim in federal court. *See* Fed. R. Civ. P. 8. Nevertheless, the court has viewed this exhibit, and it reflects that sometime in August 2024 Harlow submitted a written request to this individual stating: "I need to see mental health please and thank you." (ECF 1-1 at 37.) Rodgers wrote back on August 27, 2024, stating, "Please specify your mental health questions/concerns." (*Id.*) There is no indication from Harlow's complaint that this individual had any other involvement in these events. Based on the information he has provided, the court cannot plausibly infer that this individual was deliberately indifferent to a serious medical need in violation of the Eighth Amendment.

He also sues an "unknown medical provider" who responded to one of his written requests for medical care, again pointing the court to an exhibit to the complaint. (ECF 1 at 15.) The exhibit reflects that Harlow submitted a medical request on August 20, 2024, that is largely illegible other than to state that he was terminated from the MAT program and asking for "help." (ECF 1-1 at 36.) The unknown provider responded: "Patient began suboxone taper 6/24 due to recurrent noncompliance with MAT program rules and for medication misuse. Patient [illegible] receive Addiction Recovery materials by communicating with ARS staff via State Form #36935 (pink slip)." (*Id.*) There is no indication this individual had any other involvement in these events. It appears he or she attempted to determine what Harlow wanted and to point him in a direction where he might be able to obtain help related to his drug addiction.

Based on the information Harlow has provided, the court cannot plausibly infer that this individual was deliberately indifferent to a serious medical need in violation of the Eighth Amendment.

Harlow also sues three non-medical staff members at the prison. First, he sues Warden Brian English, but there is no indication the Warden had any personal involvement in these events or made decisions related to Harlow's medical care. The Warden cannot be held liable merely because of his supervisory position at the prison.[4] *Burks*, 555 F.3d at 595.

He also sues grievance specialist Michael Gapski, but there is no indication from the complaint that Gapski was personally involved in these events other than to process Harlow's grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). Thus, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). He has not stated a claim against the grievance officer.

He also sues Correctional Officer Broomfield (first name unknown), who allegedly told him to leave the medical unit when he got into the verbal altercation with

---

[4] It appears Harlow wants the Warden as a defendant so that he can obtain medical records and other evidence in support of his claims. (ECF 1 at 15.) If his case proceeds to discovery, there are tools available to him to obtain his medical records and other evidence without involvement by the Warden. *See generally* Fed. R. Civ. P. 26-34.

Dr. Hamlyn the day is suboxone was discontinued. There is no indication from the complaint Officer Broomfield was involved in any way in Harlow's medical care. Harlow acknowledges in an attachment to the complaint that he "argued" with Dr. Hamlyn on the date in question (ECF 1-1 at 16), and this correctional officer was entitled to take action to restore order in the medical unit. The officer's actions as described by Harlow do not give rise to an Eighth Amendment claim. *See Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

## MOTION FOR PRELIMINARY INJUNCTION

Harlow separately moves for a preliminary injunction. (ECF 3.) The motion is not a model of clarity, but it can be discerned that he is due to be released from prison on work release in January 2025. He appears to ask the court order to order medical staff to provide him with one of two specific medications given to individuals with opioid addiction. He acknowledges that these medications are not permitted within the IDOC, but he believes they represent his best chance of avoiding a relapse upon his release from custody.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*,

10

22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Harlow has not presented a sufficient basis for the extraordinary remedy of a preliminary injunction. His complaint states a claim for past injury, but it also reflects that he is currently under the care of a medical provider and, in recent months, has been regaining his health after withdrawing from suboxone. The court understands his desire to avoid a relapse, but the Eighth Amendment does not entitle him to be provided with specific medications, *Walker*, 940 F.3d at 965, or to be given "the best care possible." *Forbes*, 112 F.3d at 267. (7th Cir. 1997). His motion will be denied.[5]

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dani Hamlyn in her personal capacity for money damages for deliberate indifference to his serious medical needs in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Chad, Lisa, Health Care Administrator, Broomfield, J. Rodgers, Brian English, Amber Smith, Medical Staff, Hensley, Michael Gapski, and MAT Comitty as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

---

[5] If the court has misunderstood him, he is free to renew his request for a preliminary injunction but he must clearly outline what urgent medical problem, if any, he is currently having and how prison medical staff are responding to this problem. To avoid difficulties with legibility, he should carefully print or type his future filings.

11

Dani Hamlyn at Centurion Health and to send her a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(6) ORDERS Dani Hamlyn to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 6, 2024.

s/Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT